UNITED STATES of America, for the Use
and Benefit of J. A. EDWARDS &
CO., Inc., Plaintiff,

v.

THOMPSON CONSTRUCTION CORP.,
Standard Accident Insurance Company
and Ben B. Greene, Inc., Defendants.

United States District Court
S. D. New York.

April 14, 1959.

See also D.C., 22 F.R.D. 100.

Irving Levine, New York City, for plaintiff.

Nevius, Jarvis & Pilz, New York City, for defendants Thompson Const. Corp. and Standard Accident Ins. Co., Carl E. Buckley, New York City, of counsel.

DAWSON, District Judge.

This is an action under the Miller Act of August 24, 1935, 40 U.S.C.A. § 270a and § 270b, wherein "use plaintiff" sues to recover certain sums of money for supplies and materials sold to a subcontractor, which supplies and materials were subsequently used by the subcontractor on behalf of the Thompson Construction Corp. (hereinafter called "Thompson") which was engaged in certain construction work for the United States.

Plaintiff's summons and complaint were filed and copies served on defendants Standard Accident Insurance Company, Greene and Thompson. The defendants Thompson and Standard have appeared, but defendant Greene is in default, not having answered the summons and complaint nor having appeared in this action.

The facts as developed at pre-trial and on the trial indicate that on or about September 26, 1955, the United States Army entered into a contract with the defendant Thompson for the construction of certain facilities in Lewiston, New York. Pursuant to the Miller Act, the defendant Thompson duly executed a standard government payment bond to the United States of America wherein defendant Thompson was the principal and Standard Accident Insurance Company was the surety. The condition of this bond, as is normal in this type of transaction, provided that the principal should make payment promptly to all persons supplying labor and material in the prosecution of tract, and that such bond would remain the work provided for in the subject con- in full force and effect during the life of the contract to insure such payments by the contractor. It appears that Thomp-

son then employed a subcontractor, Ben B. Greene, Inc. (hereinafter called "Greene") and Greene, in turn, requested the use plaintiff to furnish certain electrical materials and supplies for use in the performance of the subcontract.

It further appears that delivery of all items was made but the defendant Greene failed to pay certain sums of money owed to use plaintiff, J. A. Edwards & Co., Inc. The final date of delivery of any materials and supplies by use plaintiff to subcontractor Greene was October 13, 1956 and use plaintiff maintains that within 90 days a notice was sent to the prime contractor, as provided in the statute. This notice, use plaintiff maintains, was designed and intended to notify the prime contractor that certain sums of money were owed by the subcontractor and that the contractor and his surety were therefore liable. At the trial of the action defendants' counsel maintained that the form of notice given was insufficient as a matter of law.

The basic issue which must be decided as a matter of law is whether or not the letter dated January 9, 1957, sent by the subcontractor Greene to Thompson, was sufficient notice sent by or on the authority of the materialman to the prime contractor to constitute "notice" under the provisions of 40 U.S.C.A. § 270b.

The Miller Act is unique in the sense that it gives a materialman a cause of action against a prime contractor with whom he has not been in contractual relationship, and against the surety on the prime contractor's bond. In order to protect the prime contractor and the surety, the Act requires that the materialman give a "notice" to the prime contractor within a certain period of time "stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." [1]

---

1. The specific language of the Miller Act, 40 U.S.C.A. § 270b provides:

"Provided, however, That any person having direct contractual relationship

with a subcontractor but no contractual relationship expressed or implied with the contractor furnishing said payment bond shall have a right of action upon the

The doctrine to which the courts are unanimously committed is that the protection of the materialman is the dominant purpose of the Act, and the liberal construction of its procedural provisions must be resorted to when necessary to effectuate that purpose. United States, for benefit and on behalf of Sherman v. Carter, 1957, 353 U.S. 210, 217, 77 S.Ct. 793, 1 L.Ed.2d 776.

Although the Miller Act is remedial in nature and is entitled to a liberal construction in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects, the courts have not proceeded with such liberality as to extend the scope of the Act beyond the plain words of limitation contained therein. And, in the case of contractual relationship with a subcontractor but none with the contractor giving the payment bond, the requirement of written notice is a condition precedent to the creation of a right of action on such a bond. United States for Use of Bruce Co. v. Fraser Construction Co., D.C.W.D.Ark.1949, 87 F.Supp. 1.

It appears therefore that while the Court should go as far as possible in granting relief to those furnishing materials to a government project, it cannot go beyond the plain mandate of the statute. The giving of proper written notice is a condition precedent to a right of action and this jurisdictional requirement must be met. Fleisher Engineering & Const. Co. v. United States 1940, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12; United States, for Use and Benefit of American Radiator & Standard Sanitary Corp. v. Northwestern Engineering Co., 8 Cir., 1941, 122 F.2d 600. A clear notice from the materialman to the prime contractor is a jurisdictional requirement.

In the instant case the notice which the prime contractor received was a letter sent by the subcontractor to the prime contractor. No direct and formal notice was ever sent from the materialman to the prime contractor.[2]

The use plaintiff now maintains that the letter from the subcontractor was received by the prime contractor with the understanding that it was to be the no-

---

said payment bond upon giving written notice to said contractor within ninety days from the [last] date on which said person did or performed the last of the labor furnished or supplied, the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing, the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States Marshal of the district in which the public improvement is situated is authorized by law to serve summons."

2. The language of the letter from the subcontractor to the prime contractor is as follows:
"Ben B. Greene, Inc.
Licensed Electrical Contractor
40–18 Astoria Boulevard S
Long Island City 3, N. Y.
RAvenswood 8–7501–2

January 9, 1957
Thompson Construction Corp.
"11 North Pearl Street
Albany 7, New York
Re: DA30–075 ENG 6940
Lewiston, N.Y.
Gentlemen:
According to our records, on the above captioned job, there is a balance due of $2700.10, plus the approximate sum of $4,827.88, representing change orders, to date, making a total due us of $7,527.98.
Subject to your approval, this letter may serve as your authority to make all payments now or hereafter due us under the above contract to:
J. A. Edwards & Co., Inc. for Ben B. Greene, Inc.
206 East 29th Street
New York, New York
Please charge all such payments to our account under the above contract.
We thank you for any cooperation you may extend.
Very truly yours,
Ben B. Greene, Inc.
By /s/ Ben B. Greene
bbg;bg        Ben B. Greene, President"

tice required by the Miller Act. He bases his position in part on the letter sent by Thompson to use plaintiff.[3]

■ An examination of the letter relied on by plaintiff indicates that it was not sufficient notice as required by the statute. The giving of written notice, specified by the statute, is a condition precedent to the right of a supplier to sue on the payment bond; the writing must be sent or presented to the prime contractor by or on the authority of the supplier; and the writing must inform the prime contractor expressly or by implication that the supplier is looking to the contractor for payment of the bill. Bowden v. United States, 9 Cir., 1956, 239 F.2d 572, certiorari denied United States, for Use of Malloy, 1957, 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909. Recovery cannot be had, either against the prime contractor or the surety, unless the condition precedent to the existence of a right of action—a giving of the statutory notice—has been complied with.

In the instant case the prime contractor, upon receipt of the notice from the subcontractor, was in no position to know that it had emanated from the materialman. The language of the letter and the subsequent answer indicated that there was no substantial accuracy as to the amount claimed, nor did the so-called letter of notice indicate that material had been supplied for the subject contract, nor that this letter was to be interpreted as notice under the pertinent statute.

The reply letter from Thompson to use plaintiff, referred to above, indicates the wide areas in which the so-called letter of notice failed to meet the "substantial accuracy" requirements of the statute. The so-called letter of notice could have been interpreted in any one of a number of ways. It did not indicate that Greene wanted the monies paid to use plaintiff as a result of the subject contract. It could have been reasonably interpreted to be merely an assignment for a separate and unrelated debt. It clearly did not meet the requirement that the "person having direct contractual relationship with a subcontractor but no contractual relationship, express or implied with the contractor furnishing said payment bond * * *" shall give "written notice to said contractor within ninety days from

---

3. The letter from the prime contractor to the materialman reads as follows:
"Phone
4-6179
    The Thompson Construction Corp.
        Engineers and
        Contractors
          **
        11 North Pearl Street
        Albany 7, N. Y.
        February 8, 1957
J. A. Edwards & Co., Inc.
206 East 29th Street
New York, New York
Attention: Mr. Blackledge
     Re: Contract No. DA-30-
         075-eng-6940
         AAA Facilities,
         Lewiston, N.Y.
Gentlemen:
  We are enclosing a copy of a letter dated January 9, 1957 sent by Ben B. Greene, Inc. to us. We do not, at the present time, know with definite certainty the amount we owe Greene as there are several unsettled change orders. If all the unsettled change orders are acceptable at Green's figures, then the total amount owing would be in the neighborhood of $4,500.00
  Please be advised that we will recognize the assignment to you in so far as we are permitted by law to do so. Before making any payments to you, we will want definite assurance from you, as well as delivery receipts, proving that the merchandise for which we may pay was delivered to the above job.
  We are rather disturbed about this account as it was our definite understanding that when payment of $6,946.00 was made to you by us on or about January 4, 1957, that this constituted final payment. It is rather surprising to us that since this job was finished around that time that there should be further billings for material delivered. We are wondering if the material in question was delivered prior to or after January 4th.
    Yours very truly,
    The Thompson Construction Corp.
    /s/ John S. Thompson     es
      John S. Thompson
JST:es
Copy: Ben B. Green, Inc."

the date on which such person" supplied the last material. This language contemplates a notice directly from the materialman to the contractor. This direct notice is not found in the instant case.

This Court concludes that the jurisdictional requirement as set down by the statute has not been met and in accordance with the above, judgment should be entered on behalf of the defendants Thompson and Standard Accident Insurance Company.

Insofar as these materials were delivered to Greene, Greene is liable to use plaintiff for the sums sought by use plaintiff. It has been established that use plaintiff sold materials to Greene in the sum of $7,702.70. Two credits totaling $389 were applied to this debt leaving the sum of $7,313.70 still owed to use plaintiff by Greene. Greene not having answered or otherwise appeared in this action is in default, and judgment for the sum of $7,313.70, plus interest from October 30, 1956, shall be entered against defendant Greene on behalf of use plaintiff. The action against the two other defendants shall be dismissed.

So ordered.