**UNITED STATES for the Use and Benefit of JINKS LUMBER COMPANY, Inc., Plaintiff-Appellant,**

v.

**FEDERAL INSURANCE COMPANY et al., Defendants-Appellees.**

No. 71-2291

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Dec. 14, 1971.

---

\* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

Jerry W. Gerde, Davenport, Johnston & Harris, Panama City, Fla., for plaintiff-appellant.

Gary B. Lane, Beggs, Lane, Daniel, Gaines & Davis, Pensacola, Fla., for Dyson & Fed. Ins. Co.

Robert B. Staats, Panama City, Fla., trustee.

Clinton Foster, Panama City, Fla., for Charles Register.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

PER CURIAM:

Appellant, Jinks Lumber Company, appeals from the granting of a motion for summary judgment in favor of appellee, Dyson & Company, and its surety, Federal Insurance Company, alleging that the district court was in error when it concluded that Jinks had failed to comply with the notice requirements of the Miller Act, 40 U.S.C.A. § 270b, in pressing a materialman's claim against Dyson's payment bond. We find that Jinks did give adequate notice under the statute, and reverse the decision of the district court.

Dyson, a general contractor, held the primary construction contract for a number of housing units on an Air Force Base in Florida. Dyson subcontracted the wallboard and painting requirements to Charles Register, with materials to be purchased from Jinks. Under the terms of the primary contract, Dyson furnished the usual bond to all materialmen, with the Federal Insurance Company as surety, 40 U.S.C.A. § 270a. Dyson eventually terminated its subcontract with Register, but only aft-

er Register had allegedly fallen $20,640.-76 behind in his payments to Jinks for materials furnished.

The sole issue of this case narrows to a rather thin question of law: Did Dyson receive adequate notice under the Miller Act that Jinks intended to press a materialman's claim directly against Dyson? To answer this question we must examine three letters that passed between attorneys for Dyson and Jinks. On 19 December 1969, Jinks' attorneys wrote to Dyson's attorneys, expressing Jinks' "understanding that your [Dyson's] bond would probably make your [Dyson's] company liable as a surety for Mr. Register," but also requesting that Dyson "recommend to us [Jinks] some method of obtaining payment on this matter from Mr. Register himself." That letter also contained a carbon of a letter from Jinks' attorneys to Register, stating the precise amount allegedly due to Jinks and requesting that Register contact the attorneys. On 24 December 1969, Dyson's attorneys mailed a letter to several parties who had expressed concern regarding Register's performance to that date, advising each addressee that Dyson would make no further payments to Register. Among the addressees of that letter was Jinks, to whom the following paragraph applies:

"Our client has received . . . [c]ommunication from Mssrs. Davenport, Johnston & Harris [attorneys for Jinks] *asserting a claim for materials furnished to Register by Jinks Lumber Company.*" [Emphasis added]

Dyson's attorneys concluded the 24 December letter by advising the addressees that, following completion of the primary contract, they would

". . . endeavor to set up a conference in the vicinity of Panama City, at which a genuine effort will be made to resolve by agreement all claims asserted."

There was *no further relevant communication* between the attorneys until 20 January 1971, when Jinks' attorneys sent to Dyson's attorneys a letter in which the following sentence appears:

"In accordance with the requirements of the United States Code, this is to provide you with written notice within ninety days from the date on which our client, Jinks Lumber Company, Inc., supplied the last delivery of materials to Charles 'Chuck' Register for use on the *construction job at Tyndall Air Force Base.*"

The Miller Act requires that a materialman lodge a claim of some specificity regarding the subcontractor and the amount due directly against the general contractor within 90 days of the materialman's last delivery of materials to the subcontractor. 40 U.S.C.A. § 270b. The letter of 20 January arrived after that 90-day period, while the letter and carbon of 19 December arrived well within it. Unless the letter of 19 December provided adequate notice, Jinks is barred from asserting a claim against Dyson. United States for Use and Benefit of Harris Paint Co. v. Seaboard Surety Co., 5 Cir. 1971, 437 F.2d 37. The district court granted summary judgment solely on the ground that the letter of 19 December was not adequate notice. F.R.Civ.Proc. 56(b), but we disagree.

The purpose of the notice requirement of the Miller Act is to alert a general contractor that payment will be expected directly from him, rather than from the subcontractor with whom the materialman dealt directly. Without a statutory period, materialmen might delay claims unreasonably, thus frustrating the general contractor's need to be able to commit his funds to other activities. *See* Bowden v. United States for Use and Benefit of Malloy, 9 Cir. 1956, 239 F.2d 572, cert. denied, 1957, 353 U. S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909; United States for Use and Benefit of J. A. Edwards & Co. v. Thompson Con-

struction Corp., 2 Cir. 1959, 273 F.2d 873. While the provisions of the notice requirement should be construed liberally, United States for Use and Benefit of Hallenbeck v. Fleisher Engineering & Construction Co., 2 Cir. 1939, 107 F.2d 925, *aff'd,* 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12, it is crucial that the notice state a claim directly against the general contractor, that the claim be stated with some specificity of amount due, and that the claim specify the subcontractor allegedly in arrears. *See* Bowden v. United States for Use and Benefit of Malloy, *supra*; United States for Use and Benefit of American Radiator & Standard Sanitary Corp. v. Northwestern Engineering Co., 8 Cir. 1941, 122 F.2d 600.

■ It is our conclusion that the letter of 19 December must be read together with the enclosed carbon of a letter to Register of the same date. The carbon was referred to in the text of the letter to Dyson's attorneys, and it was enclosed within the same envelope. *See* Liles Construction Co., Inc. v. United States for Use of Stabler Paint Manufacturing Co., Inc., 5 Cir. 1969, 415 F.2d 889. The carbon is clearly directed to Register, and clearly states the precise amount allegedly owed by Register to Jinks. Taken together, the letter and the carbon make sufficient claim directly against Dyson for the materials furnished, with sufficient precision regarding the defaulting subcontractor and the amount due. Dyson's assertion that the letter of 19 December must be phrased in the same manner as the letter of 20 January is not well taken. The fact that Jinks' attorneys chose to couch the 19 December letter in more gentle phrasing does not alter the fact that the letter and carbon together conveyed to Dyson precisely what Dyson was required to know under the Miller Act: a claim directly against him, a specific amount of money due, and a specific subcontractor in arrears. *See* Houston Fire & Casualty Co. v. United States for Use and Benefit of Trane Co., 5 Cir. 1954, 217 F.2d 727; Bowden v. United States for Use and Benefit of Malloy, *supra.* We conclude that the rationale of *Houston Fire,* a case in which the acceptable notice was oral rather than written, controls:

"[I]t is sufficient that there exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness was brought home to the general contractor."

Houston Fire v. United States for Use and Benefit of Trane, *supra,* 217 F.2d at 730. We note that the 24 December letter from Dyson's attorneys clearly acknowledged that Register's indebtedness and Jinks' claim had been "brought home" to Dyson.

It is possible, although we are not compelled to decide so at this point, that Dyson's own rather gentle response of 24 December, offering to stage a conference for the purpose of resolving the several claims against Register, might have lulled Jinks into relying upon the adequacy of its 19 December notice. We have concluded, however, that no clarification of the 19 December letter was necessary, since that letter conveyed adequate notice under the requirements of 40 U.S.C.A. § 270b. The summary judgment of the district court is reversed, and the case remanded for further proceedings as required.

Reversed and remanded.