UNITED STATES of America, for the Use and Benefit of BLUE CIRCLE WEST, INC., Plaintiff–Appellee,

v.

TUCSON MECHANICAL CONTRACTING INC., an Arizona corporation, dba TMCI, Defendant–Appellant.

No. 89–15408.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 18, 1990.

Decided Dec. 19, 1990.

Neal Eckel, Law Offices of Patric E. Durazzo, P.C., Tucson, Ariz., for defendant-appellant.

Michael B. Mance, Mendelsohn, Oseran, Mance & Eisner, P.C., Tucson, Ariz., for plaintiff-appellee.

Before BEEZER and KOZINSKI, Circuit Judges, and KLEINFELD,* District Judge.

* Honorable Andrew J. Kleinfeld, United States District Judge, District of Alaska, sitting by designation.

KOZINSKI, Circuit Judge:

We consider the adequacy of a supplier's notice to a contractor under the Miller Act.

## Facts

Tucson Mechanical (TMCI) was the prime contractor for a construction project at the Davis–Monthan Air Force Base in Tucson, Arizona. TMCI, as principal, and Fairmont Insurance Company, as surety, executed a payment bond to guarantee payment to all those supplying labor and materials to the project. The bond ran in favor of the United States as obligee and was filed with the Air Force contracting office. Under the Miller Act, 40 U.S.C. §§ 270a et seq., such bonds are required of all contractors on federal government construction projects.

TMCI engaged Baca Masonry Company as a subcontractor. Baca, in turn, was to hire suppliers to provide certain materials to the project. Blue Circle West was one of those suppliers.

On August 6, 1987, one day prior to its last shipment of material to the project, Blue Circle sent a letter to TMCI.[1] The letter was headed "NOTICE TO CONTRACTOR—MILLER ACT," and advised TMCI that Blue Circle had supplied or would supply to Baca $10,000.00 in building materials to be used on the Davis–Monthan project. The letter closed: "This notice is not intended to indicate that the above stated amount is past due, but intended only to meet the requirements of the Miller Act."

On October 16, 1987, Blue Circle sent a second letter to TMCI.[2] Virtually identical

1. The August 6 letter, sent by Blue Circle's agent, reads:

August 6, 1987

Request No. 149085
Reference LLI No. 0966
Tucson Mechanical Contracting, Inc.
P.O. Box 22950
Tucson, Arizona 85734–2950
NOTICE TO CONTRACTOR—MILLER ACT
The undersigned is advised that you are the Prime Contractor on that certain Public Work of improvement commonly known as Youth Center at Davis Monthan Air Force Base in Tucson, Arizona, Pima County, Contract No. F02601 87C0006, DMT78–1002 in a contract with the U.S. Government, Davis Monthan Air Force Base, P.O. Box 15035, Tucson, Arizona 85708–0035, ATTN: Contracting Division.
Please take notice that the Claimant named herein has furnished building materials to Baca Masonry, 7041 N. Camino Martin, Tucson, Arizona 85741, a sub-contractor engaged in the performance of work under your prime contract on the above described job. The estimated amount and value of the building materials already furnished or to be furnished is Ten Thousand and NO/100 Dollars, ($10,-000.00). The amount stated does not include any extra or additional orders that may hereafter be requested by Baca Masonry.
This notice is not intended to indicate that the above stated amount is past due, but intended only to meet the requirements of the Miller Act.
Marty Leyvas
Vice President, Littleton–Long, Inc.
Limited Agent for: Blue Circle West, Inc.

cc: Blue Circle West, Inc.
4100 W. Columbia
Tucson, Arizona 85705
U.S. Government, Davis
Monthan Air Force Base

P.O. Box 15035
Tucson, AZ 85708–0035
Fred S. James & Company
of Arizona
P.O. Box 12099
Tucson, Arizona 85711
BOND # FB015056
Baca Masonry
7041 N. Camino Martin
Tucson, Arizona 85741
RESEARCH AND SERVICE OF PRELIMINARY NOTICE NOW REQUIRED BY ARIZONA LIEN LAW
120 W. BROADWAY, # 34
TUCSON, ARIZONA 85701
TUCSON—882–4003
PHOENIX—256–6817 OR 256–6819

2. The October 16 letter reads:

October 16, 1987

Request No. 155709
Reference LLI No. 0966–A
Additional shipment of
$40,000.00 per Miller
Notice LLI 0966 dated
August 6, 1987

Tucson Mechanical Contracting, Inc.
P.O. Box 22950
Tucson, Arizona 85734–2950

NOTICE TO CONTRACTOR—MILLER ACT
The undersigned is advised that you are the Prime Contractor on that certain Public Work of improvement commonly known as Youth Center at Davis Monthan Air Force Base in Tucson, Arizona, Pima County, Contract No. F02601187C0006, DMT78–1002 in a contract with the U.S. Government, Davis Monthan Air Force Base, P.O. Box 15035, Tucson, Arizona 85708–0035, ATTN: Contracting Division.
Please take notice that the Claimant named herein has furnished building materials to

to the August 6 letter, it indicated that Blue Circle had supplied an additional $40,000.00 in building materials to Baca, bringing the total to $50,000.00. The October 16 letter contained the same heading and the same close as the August 6 letter, referring to the Miller Act.

TMCI paid Baca in full pursuant to their contract but Baca did not pay Blue Circle the full amount it was owed. Blue Circle brought the present suit against TMCI, Fairmont, Baca and two of Baca's officers for $24,394.53 it had not been paid for the materials it had supplied to the project. Blue Circle demands payment from TMCI pursuant to the Miller Act.

TMCI moved for judgment on the pleadings, arguing that the two letters constituted insufficient notice to apprise TMCI of a claim under the Miller Act, and that the district court therefore lacked jurisdiction over the suit. Blue Circle filed a cross-motion for summary judgment, claiming that the letters were adequate notice under the Miller Act and that Blue Circle was entitled to judgment as a matter of law. The district court held that the letters satisfied the requirements of the Miller Act and entered judgment for Blue Circle.

## Discussion

### I. Parties to the Appeal

■ The district court entered judgment against all defendants. The notice of appeal, by contrast, specifies only that "TUCSON MECHANICAL CONTRACTING INC., Defendant above named, hereby appeals." TMCI is therefore the only appellant.

FRAP 3(c) requires that a notice of appeal "specify the party or parties taking the appeal." The rule is jurisdictional. "The failure to name a party in a notice of appeal is more than excusable 'informality'; it constitutes a failure of that party to appeal." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 314, 108 S.Ct. 2405, 2407, 101 L.Ed.2d 285 (1988); accord *Meehan v. County of Los Angeles*, 856 F.2d 102, 105 (9th Cir 1988). This jurisdictional bar is not avoided because, as here, the caption of the notice of appeal lists "TMCI, et al," as defendants. As the Supreme Court explained, "et al" is simply too vague:

> The purpose of the specificity requirement of Rule 3(c) is to provide notice both to the opposition and to the court of the identity of the appellant or appellants. The use of the phrase "et al.," which literally means "and others," utterly fails to provide such notice to either intended recipient. Permitting such vague designation would leave the appellee and the court unable to determine with certitude whether a losing party not named in the notice of appeal should be

Baca Masonry, 7041 N. Camino Martin, Tucson, Arizona 85741, a sub-contractor engaged in the performance of work under your prime contract on the above described job. The estimated amount and value of the building materials already furnished or to be furnished is Fifty Thousand and NO/100 Dollars, ($50,000.00). This amount indicates an additional shipment of Forty Thousand and NO/100 Dollars in building materials, regarding Miller Notice LLI 0966. The amount stated does not include any extra or additional orders that may hereafter be requested by Baca Masonry.

This notice is not intended to indicate that the above stated amount is past due, but intended only to meet the requirements of the Miller Act.
Marty Leyvas
Vice President, Littleton–Long, Inc.
Limited Agent for: Blue Circle West, Inc.

cc: Blue Circle West, Inc.

4100 E. Columbia
Tucson, Arizona 85705

U.S. Government, Davis
Monthan Air Force Base
P.O. Box 15035
Tucson, AZ 85708–0035

Fred S. James & Company
of Arizona
P.O. Box 12099
Tucson, Arizona 85711
BOND # FB015056

Baca Masonry
7041 N. Camino Martin
Tucson, Arizona 85741
RESEARCH AND SERVICE OF PRELIMINARY
NOTICE NOW REQUIRED BY ARIZONA LIEN
LAW
120 W. BROADWAY, # 34
TUCSON, ARIZONA 85701
TUCSON—882–4003
PHOENIX—256–6817 OR 256–6819

bound by an adverse judgment or held liable for costs or sanctions.

*Torres,* 487 U.S. at 318, 108 S.Ct. at 2409; accord *Meehan,* 856 F.2d at 105.

Here, there were four defendants besides TMCI. "Et al" provides no indication which of these additional defendants appeals. The difficulty is compounded because the "et al" designation is contradicted by the text of the notice, which states that *only* TMCI appeals. Under these circumstances, the only appellant is TMCI. Cf. *National Center for Immigrants' Rights v. INS,* 892 F.2d 814, 816–17 (9th Cir 1989) (jurisdiction over all defendants where "et al" used in notice of appeal caption but all references in body of notice were to "defendants"); but see *Minority Employees of the Tennessee Dept. of Employment Security Inc. v. Tennessee,* 901 F.2d 1327, 1332 (6th Cir 1990) (en banc) (use of "plaintiffs" in body of notice of appeal insufficient to confer jurisdiction where caption reads "et al").

### II. Miller Act Notice

■ A contractor's Miller Act payment bond may be used to pay off those who supply material to subcontractors, provided the supplier promptly notifies the contractor of its claim:

> [A]ny person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.

40 U.S.C. § 270b(a).

There is no dispute that Blue Circle would be protected under TMCI's payment bond if it provided adequate notice to TMCI. There is also no dispute that the two letters were the only notification Blue Circle provided to TMCI before the ninety-day period expired. Thus, the only issue on appeal is whether the two letters constitute "notice" under the Miller Act.

■ The purpose of the Miller Act notice requirement is "to fix a time limit after which the prime contractor could make payment to the subcontractor with certainty that he would not thereafter be faced by claims of those who had supplied labor and materials to the subcontractor." *Bowden v. United States ex rel Malloy,* 239 F.2d 572, 577–78 (9th Cir 1956). Prime contractors have an obligation to pay their subcontractors; subcontractors have an obligation to pay their suppliers from those funds. Under the Miller Act, prime contractors may also be held liable to the suppliers directly. To avoid such double liability, the Miller Act requires those suppliers looking to the prime contractor for payment to notify the contractor promptly, so that the contractor can withhold sufficient funds from the subcontractor.

■ Consequently, "written notice" under the Miller Act "must inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill." Id. at 577. Accord *United States ex rel Bailey v. Freethy,* 469 F.2d 1348, 1350–51 (9th Cir 1972); *United States ex rel San Joaquin Blocklite v. Lloyd E. Tull, Inc.,* 770 F.2d 862, 865 (9th Cir 1985). It is not enough that the contractor receive notification that there is a supplier out there with uncollected bills; there must be some indication to the prime contractor that *it* is being looked to for payment.

Blue Circle's two letters to TMCI do not meet this fundamental requirement. They provide no indication, express or implied, that Blue Circle is looking to TMCI for payment. To the contrary, the letters state expressly that Blue Circle had, at that point, experienced no difficulty in securing

payment from Baca: "This notice is not intended to indicate that the above stated amount is past due." Based on this statement, TMCI would have no reason to be concerned that Baca would fail to fulfill its obligations; it therefore had no basis for withholding payment to Baca in anticipation of a direct claim from Blue Circle.[3]

The references to the Miller Act in the heading and close of the letters do not help Blue Circle. These references merely would have put TMCI on notice that Blue Circle was a potential claimant on TMCI's Miller Act bond. Such notice is insufficient. Every contractor bonded pursuant to the Miller Act knows that there are suppliers out there who *might* look to it for payment under the bond. The Miller Act references thus didn't tell TMCI anything it didn't already know. What was required was an indication that TMCI was being called upon to bring the Blue Circle/Baca account up to date.

The inadequacy of the notice here is underscored by a comparison to other cases where suppliers were found to have met the notice requirement. In *Bailey*, for example, we found the notice adequate where the supplier informed the contractor that its account with the subcontractor "shows a balance due" and asked for "any help you may be able to give us in bringing this account up to date." 469 F.2d at 1350 n. 2, 1351. Similarly, in *San Joaquin Blocklite*, the supplier timely notified the contractor that it was making a "Payment Demand," but did not specify the precise amount until a letter posted after the ninety-day deadline. 770 F.2d at 865. We held that the letters should be read together, and that the first letter was sufficient to put the contractor on notice that the supplier was looking to it for payment. Id. at 866. See also *United States ex rel Jinks Lumber*

*Co. v. Federal Insurance Co.*, 452 F.2d 485, 487–88 (5th Cir 1971) (adequate notice where letters from supplier's attorneys to contractor's attorneys made reference to amount owed by subcontractor and contractor's liability on the payment bond and asked for contractor's help). By contrast, the present letters do not ask TMCI for anything, nor do they indicate that Blue Circle was having any difficulty collecting from Baca.

■ Nonetheless, Blue Circle argues that once TMCI had notice that there was a potential Miller Act claimant out there, it had the duty to inquire whether that claim might ripen. Such reasoning, were we to accept it, would fatally undermine the Miller Act notice requirement. Blue Circle's letters were of the sort that *any* Miller Act supplier could have sent to a prime contractor, at any time, whether or not the supplier was looking for payment from the prime; the letters indicate only that Blue Circle is a supplier to a government project, protected under the Miller Act. If such notification were sufficient to impose on a prime contractor a duty to inquire whether a supplier might look to it for payment, there would be no need for the notice requirement; a prime contractor can always learn the names of suppliers and infer that they might eventually seek payment under the bond. But the Miller Act does not require them to do so. Instead, the act puts the burden on *suppliers to notify the contractor* that they are looking to the contractor for satisfaction of the debt. Blue Circle simply did not provide such notice here.

Failing TMCI's duty to inquire, Blue Circle relies on that hearty perennial, the liberal construction of a remedial statute. The company argues that to require more notice than it gave here is to deprive it of

---

**3.** The letters also provide little useful information as to *how much* TMCI should withhold. The Miller Act requires that notice should "stat[e] with substantial accuracy the amount claimed." 40 U.S.C. § 270b. The amount stated in Blue Circle's October 16 letter is more than twice as much as it eventually claimed. A contractor needs more accurate information than this about its potential debts if it is to order its business life. Nonetheless, because we hold that notice was inadequate for other reasons, we do not reach the question of whether the letters meet the "substantial accuracy" requirement.

the protection the Miller Act is meant to provide.

It is indeed true that the Miller Act "is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Clifford F. MacEvoy Co. v. United States ex rel Calvin Tomkins Co.,* 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944). But the requirement that suppliers provide notice to contractors is not the product of construction, it is the mandate of Congress. In response to Blue Circle's liberal construction argument, we could do no better than to quote Judge Walsh in our earlier opinion in *Bowden:*

> [T]his argument goes too far, too fast. It overlooks entirely the fact that the statute makes the requirement of written notice from the supplier a condition precedent to a right of action on the bond; and no rule of liberality in construction can justify reading out of the statute the very condition which Congress laid down as prerequisite to the cause of action.

*Bowden,* 239 F.2d at 577.

## Conclusion

Blue Circle did not provide notice to TMCI of its Miller Act claim; it is not entitled to the protection of that statute. The judgment against TMCI is reversed and the case remanded for the entry of judgment in TMCI's favor.